**PARCO, Inc., et al. v. PERO & DANIELS, Inc.**

No. 1268.

District Court, D. Massachusetts.

June 10, 1942.

Richard F. Walker and John D. Woodberry (of Roberts, Cushman & Woodberry), all of Boston, Mass., for plaintiff.

Cedric W. Porter (of Dike, Calver & Porter), and James R. Hodder, all of Boston, Mass., for defendant.

SWEENEY, District Judge.

In this action the plaintiffs charge that the defendant infringes Patent No. 1,618,-809, and seek an injunction against further infringement, and an accounting of profits and damages. The defenses are the usual ones of invalidity and non-infringement.

### Findings of Fact.

The plaintiff Parco, Inc., is the owner of the patent involved, and the plaintiff William B. Bliss Co., Inc., is the exclusive selling agent of the article manufactured under the patent. The defendant is a manufacturer and seller of binding tape.

The patent in question was granted on February 22, 1927, for French cord binding strips which are folded along the tops of the uppers of women's shoes. In manufacturing women's shoes, it has long been the custom to sew French cord binding tape on the outside of the uppers nearest the top of the shoe, and then to fold that tape over the top edge of the shoe and cement it on the inside of the shoe. This gives the shoe the appearance of having cord around its edge. In the earlier stages of manufacture, and prior to the plaintiffs' invention, it was customary to sew the tape on the outside of the shoe, and then to apply wet cement to the upper edge of the tape which was to be folded over. At the same time, wet cement was applied to the inner surface of the shoe in the area where the tape was to contact it. After applying the wet cement, it was necessary to let it stand for a period of about an hour until it became sufficiently tacky to adhere properly. This was a messy job, and, in many instances, shoes were spoiled because the wet cement came in contact with the shoe surfaces.

The plaintiffs and others experimented with the idea of using a tape that was entirely coated on its inner surface with a dry or thermoplastic cement. The difficulty with this process was that, in attempting to sew the tape to the outside of the shoe, the presence of the dry cement on the tape caused the transfer of particles of the cement to the sewing thread, and, through it, to the sewing machine itself, so that it was impractical to attempt to sew through the dry cement. The plaintiffs overcame this objection by so limiting the coating on their tape that the area of tape, coming in contact with the sewing machine, the needle, and thread, contained no cement. In other words, they cemented only that portion of one surface of the binding tape which came in contact with the inner side of the shoe. Other manufacturers overcame the same objection by employing a dry cement which would only liquefy at a very high temperature. The use of such a cement eliminated some, if not all, of the objectionable transfer of material to the thread and the sewing machine.

The plaintiffs' assignors applied for and secured a patent for their invention which is described technically in claim 6:

"An elongate binding strip of the type to be secured along the edge of a sheet and then folded over the edge and then have its free margin cemented to the opposite side of the sheet, characterized in that a band of cement is applied to the margin of said strip which is to be folded over the sheet before the strip is secured

to the sheet and in that the margin of the strip which is to be first secured to the sheet is free from cement, whereby no cement need be brushed on the sheet after the two are secured together and whereby the securing of the first edge of the strip to the sheet is not hindered by cement on that edge of the strip."

There is no invention claimed in the tape itself, nor is there any claim of invention made as to the composition that is applied to the tape by the plaintiffs. The invention, if any, consists in the elimination of the dry cement from that portion of the tape which is to rest on the outside of the shoe and to be attached to it by sewing.

The defendant is alleged to have infringed the plaintiffs' patent by the manufacture and sale of an elastic tape which has a thin coating of sizing or cement over its entire surface with a thicker coat of dry cement along the margin of the tape which is to come in contact with the inside of the shoe. The defendant insists that the sizing or cement, which covers the entire surface of the tape, is, in fact, an adhesive, and that, being spread over the entire surface of the tape, it would not be an infringement of the plaintiffs' patent. Evidence was presented which would indicate that this sizing material does have a little adhesive force, but I find, as a fact, that, in the sense as used in the trade, it is not an adhesive used to bind the tape to the shoe. The presence of the dry cement along the margin of the tape that is to be affixed to the inner wall of the shoe negatives the idea that there is any departure from the description of the plaintiffs' device.

I therefore find that the defendant infringes the plaintiffs' claim 6 directly, and contributes to the infringement of claims 1 to 5, if the patent is valid.

But I am not satisfied that the method employed or the article disclosed by the plaintiffs involve invention. The story seems to be that the shoe industry wanted to get away from liquid cement. It was costly to use in that it spoiled many shoes. It was necessary to provide time and space to allow the material to become tacky, and dry cement was therefore the obvious next step. There is no doubt that many manufacturers at about the same time were experimenting with dry cement, and the plaintiffs found that, in using their particular composition, they could not allow the thread in the sewing machine to come in direct contact with the cement and still do a good job. I can see no reason why the tape was ever entirely coated with dry cement if it was to be utilized only on the inner surface of the shoe. To spread it over the entire surface of the tape must have been costly, and it certainly was unnecessary. But starting from that point the plaintiffs ran into trouble through having the cement gum up the sewing machine and thread. The next step was a very obvious one,—to eliminate the cement from the portion of the tape that came in contact with the sewing machine. While I realize that it is sometimes difficult to judge in retrospect whether the matter involved invention or mere mechanical skill, it seems rather clear that the elimination of an objectionable and unnecessary matter by removing it from that portion of the tape where it is offensive can hardly be described as invention.

If it could be termed invention, the patent would be invalid in view of Calibert, 1920. He found it necessary to provide a clear gumless area on a label so that the labelling instrumentality would not become gummed when affixing printed matter to the label. To accomplish this he left that portion of the label that would come in contact with the labelling device ungummed. That is exactly what Byron and Evans, plaintiffs' assignors, did. Although I will hold that the patent is invalid for want of invention, I have, nevertheless, passed upon the question of infringement with the thought in mind that it may prevent a new trial, if my decision as to validity is overruled.

### Conclusions of Law.

From the foregoing I conclude and rule that the plaintiffs' patent is invalid for want of invention.

A decree in accordance with the above may be submitted.